Argued September 10, affirmed in part; reversed in part and
remanded December 31, 1975

# ENGELCKE, *Respondent, v.* STOEHSLER
## ET UX, *Appellants.*
544 P2d 582

*Alan M. Lee,* Klamath Falls, argued the cause for appellants. With him on the brief was Smith & Lee, Klamath Falls.

*Blair M. Henderson,* Klamath Falls, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Plaintiff brought an action against defendants upon a check which was not paid because of insufficient funds and upon a promissory note. Defendants counterclaimed for the breach of an oral lease of farm land

for five years on a share cropping basis. At the conclusion of defendants' proof the trial court sustained a demurrer to defendants' counterclaim and directed a verdict in favor of plaintiff upon both the note and the check. Defendants appeal.

Plaintiff is the owner of a 150-acre ranch and in April, 1971, entered into some sort of an oral agreement, the exact terms of which are in dispute, to lease it to defendants, one-third of the crop to plaintiff and two-thirds to defendants. At the same time plaintiff loaned defendants the sum of $6,000 for which defendants gave a promissory note which contained no maturity date but which provided that six percent interest was payable annually.

Defendants thereafter took possession of the ranch and commenced farming it. At the conclusion of 1971 a partial payment of the principal and interest on the note was made from the proceeds of the grain crop. A hay crop was also harvested in 1971 but was not sold, and remained in a hay shed on the ranch. In 1972 the first alfalfa cutting was sold during the summer. The second cutting was stored in the hay shed pending its anticipated sale. On September 15, 1972, the hay shed burned to the ground. The second 1972 alfalfa cutting and the 1971 hay crop, along with all other contents, were destroyed by the fire.

Shortly after the fire, defendants, on October 21, 1972, issued plaintiff a check representing plaintiff's share of the proceeds from the first 1972 alfalfa cutting sold earlier that summer. Plaintiff attempted to cash the check on October 27, 1972, but it was returned unpaid by the bank due to insufficient funds. Plaintiff commenced this action on February 20, 1973, to collect on the note and to recover on the check. In March of 1973 plaintiff ordered defendants off the ranch.

At trial the court, over plaintiff's objection, admitted evidence to the effect that the parties orally agreed at the time of execution of the note that the note was to be paid over a period of five years from its date. Also over plaintiff's objection, the trial court received defendants' evidence to the effect that the parties orally agreed at the time the check was issued that plaintiff would not present the check for payment until defendants received the proceeds from an insurance claim filed in connection with the destruction of the hay shed. At the close of defendants' case on their counterclaim, however, the trial court granted plaintiff a directed verdict on both the promissory note and the check. At that time plaintiff also renewed her demurrer, previously filed, to defendants' counterclaim on the ground that the oral lease violated the statute of frauds. Defendants in response moved the court to amend their pleadings to conform to their proof to interpose allegations of equitable estoppel sufficient to remove the agreement from the statute of frauds. The trial court sustained plaintiff's demurrer and denied defendants' leave to amend.

■ Defendants claim the trial court erred in granting a directed verdict upon the note because the trial court should have submitted to the jury the issue of whether the parties agreed that the note was for a period of five years. It is unnecessary for this court to consider this issue because the defendants in their testimony admitted that the payment of the interest due by the terms of the note on April 3, 1972, was delinquent when plaintiff's complaint was filed. By the terms of the note the entire sum of both principal and interest was due if the interest became delinquent. The trial court did not err in directing a verdict upon the note.

■■ Defendants also contend the trial court erred in granting a directed verdict upon the check because

of defendants' testimony to the effect that the parties orally agreed that the check was not to be effective and should not be presented for payment until defendants received the insurance money from the destruction of the hay crops by fire. Parol evidence is admissible to show that the check was not to be operative as a binding obligation until the occurrence of some condition precedent. *Osburn v. Lucas,* 263 Or 480, 483, 502 P2d 1382 (1972); Brady, Bank Checks 62-63, § 3.6 (4th ed 1969); Britton, Bills and Notes 128, § 54 (2d ed 1961). The issue should have been submitted to the jury and the trial court was in error in directing a verdict upon the check.

■ Plaintiff contends that the insurance proceeds had been received by the time of trial and, therefore, the check was payable at that time and the judgment should be sustained. This is an action on the check, *not on the underlying debt.* The drawer is liable *upon the check* only if the bank on proper presentment refuses to honor it and the holder thereafter gives the necessary notice of dishonor and protest, ORS 73.1020 (1)(d), 73.4130(2); White and Summers, Uniform Commercial Code 411, § 13-9 (1972). Proper presentment to the bank was a condition precedent to defendants' liability. If there was a condition precedent to the effectiveness of the check, as defendants contend, the presentment prior to the time it was a binding obligation was a nullity because it was not intended to be a valid check at that time. There was no evidence of any presentment subsequent to the receipt by defendants of the proceeds of the insurance.

The last issue raised is the failure of the trial judge to allow the defendants to amend their counterclaim in conformance with the proof to allege that plaintiff was estopped to assert the bar of the statute of frauds. Defendants' original counterclaim alleged that plaintiff and defendants entered into "an oral

agreement for the lease of land for farming purposes * * * for a period of five (5) years" and that "in consideration of said lease, Defendants were to pay to the plaintiff one-third (⅓) of the proceeds of the hay/grain crop taken from said property, and thereafter did so for a period of two years." Defendants further alleged that plaintiff breached the agreement by ordering them off the property, and that they were damaged thereby.

At the commencement of trial plaintiff demurred to the counterclaim upon the basis that, as an oral agreement to lease real property for longer than one year, it violated the statute of frauds. ORS 41.580(5). The demurrer was overruled. Plaintiff renewed the demurrer at the close of her evidence, but before defendants' presentation on the counterclaim, and it was again overruled. At the close of defendants' case plaintiff again asserted the demurrer; defendants moved the court to amend their pleadings to conform to the proof by alleging equitable estoppel sufficient to obviate the statute of frauds. Defendants' proposed amendment would have read:

"In consideration and reliance on said oral lease, the Defendants planted crops and worked on said property and were to pay to the Plaintiff one-third (⅓) of the proceeds of the hay/grain crop taken from said property, and thereafter did so for a period of two years." (Amendments underlined.)

The court sustained plaintiff's demurrer and denied defendants' motion to amend to conform to the proof. Defendants contend the trial court abused its discretion in refusing to permit them to amend. There was evidence that defendants had planted a crop of alfalfa, the probable life of which was at least four years.

Defendants' proposed amendment effectively

alleged equitable estoppel sufficient to preclude plaintiff from asserting the defense of the statute of frauds. Equitable estoppel must be distinguished from the doctrine of part performance, which is cognizable only in equity as a defense to an equitable cause of suit. *Hearn v. May et al*, 207 Or 514, 519, 298 P2d 177 (1956). Equitable estoppel, on the other hand, may be asserted in an action at law. It rests upon the principle that, where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds. *Stevens v. Good Samaritan Hosp.*, 264 Or 200, 204-05, 504 P2d 749 (1972); *United Farm Agency v. McFarland*, 243 Or 124, 130-31, 411 P2d 1017 (1966); Note, *The Doctrine of Equitable Estoppel and the Statute of Frauds*, 66 Mich L Rev 170, 174-76 (1967). Plaintiff asserts that defendants have not adequately pleaded estoppel in their proposed amended counterclaim because they have not alleged conduct "unequivocally referable to the oral agreement." Plaintiff has misread the opinion in *Stevens*, however. Proof of conduct unequivocally referable to the oral agreement is necessary to establish part performance but it is not, as the *Stevens* opinion points out, a necessary element in estoppel. 264 Or at 206-07.

The trial court may allow an amendment to conform to the proof under ORS 16.390 "when the amendment does not substantially change the cause of action and when the evidence on which the amendment is based was received without objection." *Eck v. Market Basket*, 264 Or 400, 406, 505 P2d 1156 (1973); *Cutsforth v. Kinzua Corp.*, 267 Or 423, 433-34, 517 P2d 640 (1973); *Quirk v. Ross*, 257 Or 80, 83, 476 P2d 559 (1970). Whether to allow or refuse such an amendment is addressed to the discretion of the trial court, which will be reversed only for an abuse of discretion. *Eck v. Market Basket, supra* at 407-08;

*Quirk v. Ross, supra* at 83; *Von Bergen v. Kuykendall,* 240 Or 191, 193, 400 P2d 553 (1965). However, the policy of this court is that such amendments are to be liberally allowed. *Quirk v. Ross, supra* at 83; *Morrill v. Rountree,* 242 Or 320, 324-25, 408 P2d 932 (1965); *Von Bergen v. Kuykendall, supra* at 193. When an amendment is refused, the exercise of discretion is measured by the amount of prejudice that would result to the opposing party from amendment at such a late stage in the case. *Morrill v. Rountree, supra* at 325.

In *Quirk v. Ross, supra,* it was stated that "[w]here the party seeking the amendment has reasonable means of learning or has knowledge prior to trial of the circumstances which make it desirable for him to amend, a slight chance that the other party will be prejudiced will justify a refusal of the requested amendment * * *." 257 Or at 83-84. Defendants certainly cannot claim that they were unaware, prior to trial, of the circumstances making it desirable for them to amend. They knew it was an oral lease (they alleged it, after all). If they were not aware before trial, they were certainly put on notice when plaintiff filed her demurrer at the beginning of trial. Nevertheless, the language in *Quirk* should not be read to eliminate the requirement of prejudice to the opposing party.

■ No objection was made to the introduction of evidence concerning the oral lease. The plaintiff admitted there was an oral lease but claimed it was from year to year. The terms of the lease were fully litigated by both sides. There was a letter in evidence from plaintiff to defendants in which plaintiff unequivocally admitted there was a lease for five years, though she attempted to qualify the admission at trial. There could be no possible surprise and, thus, prejudice to plaintiff because the claim of an oral lease for

five years was alleged in defendants' original counterclaim. Because the matter had been completely tried, with no discernible prejudice to plaintiff, it is our opinion that the trial court abused its discretion in failing to allow the defendants to amend their counterclaim to conform to the proof.

Affirmed in part; reversed in part and remanded for trial.