Argued and submitted April 29, 2008, affirmed April 15, 2009

Lawrence D. BRICE,
*Plaintiff-Respondent,*

*v.*

Richard J. HRDLICKA,
*Defendant-Appellant.*

Deschutes County Circuit Court
04CV0422MA; A132940

206 P3d 265

Brian T. Hemphill argued the cause for appellant. With him on the briefs was Brian T. Hemphill, P.C.

George W. Kelly argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment enforcing an oral agreement for the conveyance of an interest in real property. Although defendant advances seven assignments of error, we write only to address defendant's contention that the statute of frauds prohibits the agreement's enforcement, rejecting defendant's other assignments of error without discussion. Because we conclude that plaintiff demonstrated part performance of the agreement, an exception to the statute of frauds, we affirm.

Although plaintiff mislabeled his claim, he effectively sought specific performance of the oral agreement, and the trial court granted that relief. We review such equitable claims *de novo*. ORS 19.415(3). Plaintiff and defendant were the only witnesses at trial. Because the trial court had the opportunity to see and hear them as they testified, we defer to the court's express and implied credibility findings. *Timm and Timm*, 200 Or App 621, 623, 117 P3d 301 (2005).

Except as otherwise noted, the following facts are undisputed. Plaintiff and defendant were friends who jointly purchased several pieces of real estate. One such purchase involved two condominiums, Units 109 and 111. Although they later sold Unit 109, the parties retained ownership of Unit 111, which was titled in plaintiff's wife's name. Plaintiff was primarily involved in the condominium's management.

In 1990, the parties jointly purchased the property that is the focus of this dispute—a 40-acre parcel known as the Gist Road property—for $100,000. The parties held title as tenants in common. Although the parties initially intended to subdivide the property into two 20-acre lots, they ultimately were unable to do so because of zoning regulations. Defendant moved onto the property in 1992. Although the record is somewhat unclear on this point, the parties appear to have conducted an informal subdivision of the property, and defendant placed a mobile home on his portion. Although both parties contributed equally to the mortgage and taxes, they also agreed that defendant would be responsible for the difference in taxes caused by defendant's improvements to the land.

In 1998, defendant sought to use his interest in the Gist Road property as collateral for a loan. Because defendant could not obtain a loan unless he had sole title to the property, plaintiff agreed to transfer his one-half interest in the Gist Road property to defendant, who, after obtaining the loan, would then transfer the one-half interest back to plaintiff. Accordingly, the parties executed two bargain and sale deeds for the Gist Road property. Each deed described the consideration for the conveyance as "other."

Two years later, defendant again asked plaintiff to transfer his one-half interest in the Gist Road property to defendant so that defendant could obtain another loan on the property. Plaintiff agreed. The transfer was to mirror the 1998 transaction. By 2000, plaintiff had invested approximately $60,000 in the Gist Road property; the property itself was valued in excess of $300,000. In contrast, the parties' investment in Unit 111 had not been profitable. In early 2000, the condominum's mortgagee, Bauhofer, began foreclosure proceedings against plaintiff's wife. The debt on the condominium exceeded its value, and its costs exceeded the income it generated. Plaintiff contends that he told defendant about the ongoing foreclosure proceedings; defendant contends otherwise.

The parties met in March 2000 so that plaintiff could convey his one-half interest in the Gist Road property to defendant. Before the meeting, defendant's escrow company sent plaintiff a quitclaim deed, which plaintiff refused to sign. Instead, he purchased a blank bargain and sale deed shortly before the meeting. The parties' accounts of their meeting diverge. According to plaintiff, defendant promised that, as in 1998, he would convey a one-half interest in the Gist Road property back to plaintiff after obtaining the loan. According to defendant, plaintiff instead proposed—and defendant accepted—an exchange wherein plaintiff would trade his one-half interest in the parcel for defendant's interest in Unit 111. In any event, the parties agree that plaintiff prepared the blank bargain and sale deed using the deed from the parties' 1998 transaction as a model. Like the 1998 deed, the 2000 deed indicated that the transfer was supported by "other consideration." Shortly after the parties'

meeting, plaintiff's wife deeded Unit 111 back to Bauhofer to satisfy the parties' obligations with respect to that property.

Three years later, plaintiff brought this lawsuit after discovering that defendant had not executed a deed conveying a one-half interest in the Gist Road property back to plaintiff. At trial, both parties agreed that they had orally agreed that plaintiff would convey his one-half interest in the parcel to defendant. However, they disagreed about the consideration for that conveyance. Plaintiff contended that the consideration for the exchange was defendant's promise to later convey a one-half interest in the Gist Road property back to plaintiff. Meanwhile, defendant asserted that the consideration for the exchange was defendant's one-half interest in Unit 111. Plaintiff contested defendant's version of the agreement, arguing that, given the equity that plaintiff had invested in the Gist Road property, the limited value of Unit 111, and its imminent foreclosure, such an exchange would have been illogical. Plaintiff also elicited testimony from defendant admitting that all improvements to the Gist Road property remained confined to defendant's separate, identifiable 20-acre portion of the parcel.

Defendant contended that the parties' behavior after 2000 demonstrated that his version of events was more plausible. In particular, defendant emphasized that, after the date of the transfer, plaintiff made no payments on the Gist Road property and made no inquiries about the property. Further, defendant testified that, after 2000, he had obtained additional financing on the entire Gist Road parcel and would not have done so had he not believed that he owned the entire parcel. Plaintiff acknowledged that he had made no mortgage payments on the Gist Road property after 2000, but testified that, at the meeting in 2000, he had told defendant that he was experiencing financial difficulties, that defendant would have to be responsible for further payments, and that they would "settle up" when they sold the property or in the event of a future subdivision.

■ Although the trial court did not state its reasons for doing so, the court found for plaintiff and enforced the oral agreement, ordering defendant to deed a one-half interest in the Gist Road property to plaintiff as a tenant in common.

However, oral agreements for the transfer of interests in real property are subject to the statute of frauds and are generally unenforceable, unless an exception to the statute of frauds applies. *Oltmanns v. Lewis*, 135 Or App 35, 38, 898 P2d 772 (1995). Because the statute of frauds would otherwise prohibit the enforcement of the parties' agreement, we assume that the trial court found that an exception brought the parties' agreement outside the statute of frauds.

■　　In his first assignment of error, defendant contends that, because the oral agreement that plaintiff seeks to enforce is one for the transfer of an interest in real property, the statute of frauds prevents its enforcement. Plaintiff responds that the agreement is outside the statute of frauds because, by conveying his one-half interest to defendant, he performed under the agreement's terms. Accordingly, plaintiff argues that the trial court correctly enforced the agreement. On *de novo* review, we agree with plaintiff.

■　　Oregon's statute of frauds requires that certain types of agreements, including those "for the sale of real property, or any interest therein," must be in writing, unless an exception applies.[1] The doctrine of part performance is one such exception. *Luckey et ux v. Deatsman*, 217 Or 628, 633, 343 P2d 723 (1959). Under that doctrine, a court may enforce an agreement that would otherwise violate the statute of frauds if three requirements are met. First, the party asserting part performance must provide preponderating evidence of an agreement that is "clear, certain and unambiguous in its terms." *Young v. Neill et al.*, 190 Or 161, 166, 220 P2d 89 (1950). Second, there must be evidence of conduct "unequivocally and exclusively referable to the contract." *Strong v. Hall*, 253 Or 61, 70, 453 P2d 425 (1969). Finally, there must

---

[1] ORS 41.580 provides, in part:

"(1) In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"* * * * *

"(e) An agreement * * * for the sale of real property, or of any interest therein."

be equitable grounds for enforcing the agreement, such as facts justifying the avoidance of unjust enrichment or relief from fraud. *Luckey*, 217 Or at 633.

■      Whether a plaintiff partially performed an agreement so as to remove it from the statute of frauds is a question of fact. *Howland v. Iron Fireman Mfg. Co.*, 188 Or 230, 317, 322-23, 215 P2d 380 (1950). We begin by considering whether plaintiff proved the terms of the agreement here by a preponderance of the evidence. In order to reach the result that it did, the trial court must have found plaintiff's testimony on the issue of the terms of the 2000 oral agreement more credible than defendant's testimony, and we defer to that implied credibility finding. Plaintiff presented evidence of the terms of a previous similar transaction and evidence that the parties intended the terms of the 2000 transaction to mirror that previous transaction. There was also evidence that the parties used the deed from that transaction as a guide for the 2000 agreement. Moreover, under defendant's alternative version of events, plaintiff surrendered his valuable one-half interest in the Gist Road property in order to obtain an essentially valueless interest in a condominium in foreclosure. In light of that evidence, and deferring to the trial court's implied credibility findings, we conclude that plaintiff has established that, under the terms of the 2000 oral agreement, plaintiff was to convey his one-half interest in the property as consideration for defendant's promise to later convey a one-half interest in the Gist Road property back to plaintiff, consistent with the parties' earlier, fully performed agreement.

We turn next to the question of whether there is evidence of conduct "unequivocally and exclusively referable to" the oral agreement. *See Strong*, 253 Or at 70. The parties' conduct must "give rise to an inference of the existence of the contract, and the doing of it must not be susceptible of otherwise being reasonably accounted for." *Id.*; *see also Clark v. Portland Trust Bank et al*, 221 Or 339, 355, 351 P2d 51 (1960) (acts of part performance "must be referable to and induced by the contract relied upon, and must have been done with a view to its complete performance"); *Jewell v. Harper*, 199 Or 223, 234, 258 P2d 115 (1953) (the "acts of performance relied

upon must be such that they would not have been done except for the contract of the parties").

After examining the evidence, we conclude that plaintiff's conduct is exclusively referable to the oral agreement. Plaintiff performed the only act that the agreement required of him: he executed the deed conveying his one-half interest in the Gist Road property to defendant. In light of the amount of equity that he had invested in the property—over $60,000—it is illogical that plaintiff—or any reasonable person—would have conveyed that interest in exchange for an interest in a condominium with chronic negative cash flow and against which foreclosure proceedings were pending. Accordingly, we conclude that plaintiff acted in reliance on the oral agreement.

Nevertheless, defendant protests that plaintiff's conduct is equally explainable as pursuant to the agreement described by defendant. We disagree. As we described above, no reasonable person in plaintiff's position would have entered into the agreement described by defendant. Moreover, defendant did not need to take any action regarding Unit 111, which was titled in plaintiff's wife's name, and plaintiff's actions simply involved deeding the property back to Bauhofer, thereby preventing foreclosure. Those actions are not unequivocally referable to an agreement such as defendant describes.

Finally, we consider whether there are equitable grounds for enforcing the agreement and conclude that there are. Plaintiff conveyed his one-half interest in property valued at $300,000 in return for defendant's promise to later convey a one-half interest in the same property to plaintiff. Defendant has not done so, and there is no evidence suggesting that defendant has otherwise compensated plaintiff for plaintiff's one-half interest in the Gist Road property. If the agreement is not enforced, defendant will have been unjustly enriched.

Affirmed.